United States District Court
Western District of Texas
Austin Division

| | |
|---|---|
| Epi's Canoe & Kayak Team, LLC and Jessie Fuentes,<br><br>*Plaintiffs*,<br><br>v.<br><br>State of Texas, *et al.*,<br><br>*Defendants*. | No. 1:23-cv-00836-DII |

### Defendants' Opposition to Plaintiffs' Motion to Remand

Plaintiffs challenge Texas's deployment of buoys into the Rio Grande as violating federal law. And yet Plaintiffs have asked this Court to remand these federal questions to state court. That is despite the fact that another federal court is currently deciding these same federal questions. For the reasons explained below, Texas respectfully asks this Court to deny the motion to remand.

### Background

Plaintiffs filed their Original Petition in the 98th District Court of Travis County on July 7, 2023, naming as Defendants the State of Texas, Governor Greg Abbott and several other Texas officials in their official capacities, and two State agencies (collectively, "Texas"). ECF No. 1-2. On July 14, 2023, Plaintiffs filed their First Amended Original Petition in the same 98th District Court of Travis County, Texas. ECF No. 6-1.

On July 21, 2023, Texas timely removed the action to the United States District Court for the Western District of Texas. ECF No. 1. On the same day, Plaintiffs served the First Amended Original Petition on Defendants. On July 24, 2023, Plaintiffs filed their Motion to Remand, ECF No. 6, as well as a Motion for Preliminary Injunction, ECF No. 7.

Texas properly removed this action to this Court pursuant to 28 U.S.C. § 1441. Although Plaintiffs now nominally couch their causes of action as ones based on Texas state law, they repeatedly invoke the United States Constitution, United States statutes, and United States treaties in their First Amended Original Petition. Plaintiffs thus rely on federal law as essential to their claims. Determinations of substantial issues of federal law are necessary for the adjudication of their claims, and federal-question jurisdiction therefore exists in this case. *See, e.g.*, *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 917 (5th Cir. 2001); *Offshore Serv. Vessels L.L.C. v. Surf Subsea, Inc.*, 2012 WL 5183557, at *5–6 (E.D. La. Oct. 17, 2012) (federal-question jurisdiction existed in suit seeking declaratory and injunctive relief requiring determination of issues of federal law).

Plaintiffs rely on the following federal questions in their First Amended Original Petition as essential bases for their claims in this case:

***Alleged preemption by federal immigration laws.*** Plaintiffs claim that Texas's challenged actions independently conflict with Congress's power over immigration (principally through the Immigration and Nationality Act (INA)). ECF No. 6-1 at ¶¶ 32–38. They invoke *Arizona v. United States*, 567 U. S. 387 (2012), to claim that federal law makes Texas's challenged actions *ultra vires* and illegal. ECF No. 6-1 at ¶ 33. Plaintiffs expressly seek a declaratory judgment that deployment of the challenged buoys is "preempted by federal law." ECF No. 6-1 at ¶ 105. In this respect as well, this is not a case where federal preemption is asserted defensively, but one in which the Plaintiffs chose to offensively claim federal preemption as an essential part of their causes of action.

***Alleged violation of Section 10 of the Rivers and Harbors Act.*** Plaintiffs claim that the "federal government has exclusive jurisdiction to approve projects in the Rio Grande pursuant to § 403 of the Navigable Rivers Act"—a reference to Section 10 of the Rivers and Harbors Act, 33 U.S.C. § 403. ECF No. 6-1 at ¶ 32. Apparently

relying in part on this federal statute, Plaintiffs claim that "federal law preempts Texas law," and makes Texas's challenged actions *ultra vires*. ECF No. 6-1 at ¶ 38. This is not a case where federal preemption is asserted as a defense, but where the Plaintiffs offensively claim a violation of a federal law to support their federal-preemption claim—an essential part of their causes of action.[1]

***Alleged violation of a United States treaty.*** Plaintiffs claim that the 1944 Treaty between the United States and Mexico places the Rio Grande under the jurisdiction of an "international body," the International Boundary and Water Commission (IBWC). ECF No. 6-1 at ¶¶ 31–32. Plaintiffs claim that Texas violated the 1944 Treaty between the United States and Mexico when it placed the challenged buoys in the Rio Grande. Plaintiffs argue that these claimed violations of a United States treaty rendered Texas's actions "*ultra vires*." ECF No. 6-1 at ¶¶ 88–89. They demand a declaratory judgment to that effect, *id.* at ¶ 101, arguing that Governor Abbott acted "in violation of the 1944 Treaty" in placing the challenged buoys, *id.* at ¶ 103. These claims necessarily require a determination of federal law.

\* \* \*

Texas strongly disputes each of Plaintiffs' claims that any challenged actions of the State violate the United States Constitution, statutes, or treaties, and further disputes that federal law preempts them.

## Argument

Plaintiffs' claims against Texas in this case were properly removed because they "aris[e] under the Constitution, laws, or treaties of the United States." 28

---

[1] Also pending in the Western District of Texas is *United States v. Abbott*, No. 1:23-cv-853 (W.D. Tex. 2023), in which the United States asserts federal jurisdiction in part based on 28 U.S.C. § 1331—and (same as Plaintiffs here) claiming violation of Section 10 of the River and Harbors Act by deploying the same buoys in the Rio Grande. That case is subject to a motion to consolidate with this case. *See* ECF No. 14.

3

U.S.C. § 1331. Generally, cases "arise under" federal law "where the vindication of a right under state law necessarily turn[s] on some construction of federal law." *Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Tr. for S. Cal.*, 463 U.S. 1, 9 (1983). The Supreme Court has repeatedly emphasized that a federal court can exercise federal-question jurisdiction so long as one of a plaintiff's claims depends on the resolution of a substantial question of federal law. *See, e.g.*, *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 163–64 (1997).

A plaintiff's characterization of its causes of action as state-law claims is not dispositive. *See id.* at 164. Specifically, "[u]nder the *Grable* doctrine,[2] 'federal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal–state balance approved by Congress.'" *Rivera v. Orion Marine Grp. Inc.*, 509 F. Supp. 3d 926, 940 (S.D. Tex. 2020) (quoting *Gunn v. Minton*, 568 U.S. 251, 258 (2013)). Here, Plaintiffs' claims satisfy those four elements. Accordingly, this case is removable, and this Court should deny Plaintiffs' motion to remand.

I. **Plaintiffs' claims necessarily raise federal issues.**

The first element is met because Plaintiffs' *ultra vires* claims against Texas are based on federal issues. For this Court (or any court) to resolve this dispute, questions of federal law will have to be answered.

For one thing, Plaintiffs claim that Texas's deployment of buoys in the Rio Grande is effectively a flagrant "disput[ation] [of] federal immigration policy." ECF No. 6-1 at ¶ 95. According to Plaintiffs, deploying buoys in the Rio Grande is unlawful because, under *Arizona v. United States*, 567 U.S. 387 (2012), "Texas does not have a constitutional or statutory right to regulate the border." ECF No. 6-1 at

---

[2] *Grable & Sons Metal Prod., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 318–19 (2005).

¶¶ 33–36. In *Arizona*, the Supreme Court considered "whether federal law preempt[ed] … four separate provisions of [a] state law." 567 U.S. at 392. So, in other words, Plaintiffs are making a preemption argument. Plaintiffs say as much, claiming that "*because federal law preempts Texas law*," Governor Abbott's deployment of buoys "constitutes *ultra vires* acts." ECF No. 6-1 at ¶ 38 (emphasis added). Plaintiffs even "seek a declaration that" Texas's actions "are preempted by federal law." *See* ECF No. 6-1 at ¶ 105.

But as federal courts across the country have held, "preemption is a federal question." *E.g.*, *Serv. Eng'g Co. v. Emery*, 100 F.3d 659, 660 (9th Cir. 1996); *see also Sparks v. R.J. Reynolds Tobacco Co.*, No. C94-783C, 1994 WL 16185144, at *3 (W.D. Wash. Dec. 9, 1994) ("Since preemption is a federal question, federal precedent controls."). And "since preemption is a federal question," "state-law issues do not predominate over federal ones." *Chaudhary v. Chubb & Son, Inc.*, No. H-18-2179, 2021 WL 707645, at *3 (S.D. Tex. Feb. 23, 2021) (Rosenthal, J.) (denying remand).

Another federal question Plaintiffs' claims raise is whether Texas deployed buoys in violation of "the federal government[']s [] exclusive jurisdiction to approve projects in the Rio Grande pursuant to [Section 10 of the River and Harbors Act.]" ECF No. 6-1 at ¶ 32. And federal courts have found federal-question jurisdiction when called upon to interpret the River and Harbors Act in order to dispose of a plaintiff's claim. *See Potomac River Ass'n, Inc. v. Lundeberg Md. Seamanship Sch., Inc.*, 402 F. Supp. 344, 353–54 (D. Md. 1975).

Furthermore, Plaintiffs claim that "Governor Abbott committed an *ultra vires* act" *because* he "install[ed] buoys in international waters exclusively governed by the IBWC and in violation of the 1944 Treaty." ECF No. 6-1 at ¶ 89. Whether the segment of the river in question is governed exclusively by the IBWC, and whether a federal treaty has been violated, are federal questions. The Fifth Circuit has long held that this is true for the 1944 Treaty. *Hidalgo Cnty. Water Control & Imp. Dist.*

5

*No. 7 v. Hedrick*, 226 F.2d 1, 6 (5th Cir. 1955) (explaining that the "case before us meets the test" for federal-question jurisdiction since the court must "apply, construe or pass upon the treaty," specifically the 1944 Treaty "between the United States and Mexico" involving the "treaty waters of the Rio Grande").

And here, Plaintiffs' claims against Texas require them to prove that the international waters or boundaries at issue are in fact "exclusively governed" by the 1944 Treaty and within the "exclusive jurisdiction" of the IBWC. ECF No. 6-1 at ¶¶ 88–90; *see also* ECF No. 6-1 at ¶¶ 100-02.

Failing to prove these federal-law claims will defeat Plaintiffs' claim that Texas unlawfully deployed buoys at Eagle Pass. After all, if Texas's deployment of the buoys did not violate the 1944 Treaty, and if that portion of the Rio Grande is not under the exclusive control of the IBWC, then Plaintiffs would be unable to claim that Texas illegally relied on governing state law. And Plaintiffs would be unable to prove that such actions were "preempted by federal law," "ultra vires," and "arbitrary and capricious." *See* ECF No. 6-1 at ¶ 105.

For these reasons, Plaintiffs' complaint necessarily raises several federal questions that are essential elements of their claims.

## II. Plaintiffs' claims are actually disputed.

The second element is met because not only are these federal issues a *necessary* part of Plaintiffs' claims, but they are *actually disputed* between the parties. Texas reserves the right to argue the full merits on these federal issues at the appropriate stage of litigation. But Texas indeed contests each of Plaintiffs' claims. Texas contests that its deployment of buoys is preempted by federal law. *Contra* ECF No. 6-1 at ¶ 105. And the Supreme Court's decision in *Arizona v. United States* does not dictate that Texas's deployment of buoys is unlawful. In other words, preemption is actually disputed.

Texas also contests that it has violated Section 10 of the River and Harbors Act. *Contra, e.g.*, ECF No. 6-1 at ¶ 32. And Texas contests Plaintiffs' claim that deploying the buoys "violat[ed] the 1944 Treaty" because the segment of the Rio Grande in which the buoys were deployed are "international waters exclusively governed by the IBWC." *Contra, e.g.*, ECF No. 6-1 at ¶¶ 88–90, 95, 101–03.

In sum, the federal issues that Plaintiffs' claims raise are indeed "actually disputed." Therefore, the second element is met.

### III. The federal issues in this case are substantial.

The third element is also met. The federal law issues invoked by Plaintiffs' suit are substantial. When determining substantiality, "it is not enough that the federal issue be significant to the particular parties in the immediate suit"—instead, "[t]he substantiality inquiry under *Grable* looks instead to the importance of the issue to the federal system as a whole." *Gunn v. Minton*, 568 U.S. 251, 260 (2013).

The Supreme Court has suggested several reasons why an issue may be substantial, including (1) "because state adjudication would undermine the development of a uniform body of federal law"; (2) "because the case presents a nearly pure issue of law that would have applications to other federal cases"; or (3) "because resolution of the issue has broad significance for the federal government." *Bd. of Comm'rs of Se. La. Flood Prot. Auth.-E. v. Tenn. Gas Pipeline Co., L.L.C.*, 850 F.3d 714, 724 (5th Cir. 2017) (cleaned up).

Here, state-court adjudication threatens the development of a uniform body of federal law because another federal court is set to determine the same federal issues raised in this case. *See generally United States v. Abbott*, No. 1:23-cv-853 (W.D. Tex. 2023). Indeed, it is for that reason that Texas has moved to consolidate *United States v. Abbott* with this case. *See generally* ECF No. 14.

This case also presents a nearly pure issue of law. Texas does not dispute that it has deployed nearly 1,000 feet of buoys into the Rio Grande—it simply contends that doing so was lawful. And the federal issues at raised would unquestionably "have applications to other federal cases"—namely, *United States v. Abbott*. *See* No. 1:23-cv-853 (W.D. Tex. 2023).

Lastly, Plaintiffs' claims also involve issues with broad significance for the federal government. The federal issues raised are high-profile issues concerning the U.S.–Mexico border and the regulation of aliens crossing into Texas. As such, they have "broad significance [and implications] for the federal government," and they primarily involve legal questions about the respective roles of federal law and Texas law. *Tenn. Gas Pipeline Co., L.L.C.*, 850 F.3d at 724.

The federal issues raised are substantial. The third element is therefore met.

## IV. The federal issues are capable of review in this Court.

Finally, the fourth element is met. This Court is well able to review the federal issues Plaintiffs' claims raise. Federal-court review of Plaintiffs' claims will not upset the balance between state and federal judicial responsibilities. This is because removal in this case would not result in "a potentially enormous shift of traditionally state cases into federal courts." *Tenn. Gas Pipeline Co., L.L.C.*, 850 F.3d at 724–25 (quoting *Grable*, 545 U.S. at 318–19). Indeed, Plaintiffs' claims would not shift cases from the state docket to the federal docket as this case involves high-stakes federal issues and federalism concerns: concerns that are regularly decided by federal courts as compared to state courts. The fourth element is met. And therefore, this case should not be remanded to state court.

## Conclusion

For the foregoing reasons, Texas respectfully requests that this Court deny Plaintiffs' Motion to Remand.

| | |
|---|---|
| Date: August 3, 2023 | Respectfully submitted, |
| ANGELA COLMENERO<br>Provisional Attorney General | PATRICK K. SWEETEN<br>Special Counsel<br>Tex. State Bar No. 00798537<br>patrick.sweeten@oag.texas.gov |
| BRENT WEBSTER<br>First Assistant Attorney General | |
| GRANT DORFMAN<br>Deputy First Assistant Attorney General | */s/ Ryan D. Walters*<br>RYAN D. WALTERS<br>Deputy Chief<br>Special Litigation Division<br>Tex. State Bar No. 24105085<br>ryan.walters@oag.texas.gov |
| RALPH MOLINA<br>Deputy Attorney General for Legal Strategy | |
| OFFICE OF THE ATTORNEY GENERAL<br>P. O. Box 12548, MC-009<br>Austin, TX 78711-2548<br>(512) 936-2172 | DAVID BRYANT<br>Special Counsel<br>Tex. State Bar No. 03281500<br>david.bryant@oag.texas.gov |
| | MUNERA AL-FUHAID<br>Special Counsel<br>Tex. State Bar No. 24094501<br>munera.al-fuhaid@oag.texas.gov |
| | **Counsel for Defendants** |

### CERTIFICATE OF SERVICE

On August 3, 2023, this document was filed electronically through the Court's CM/ECF system, which automatically serves all counsel of record.

*/s/ Ryan D. Walters*