IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| EPI'S CANOE & KAYAK TEAM, LLC, and JESSIE F. FUENTES, | § § § § § § § § § § § | |
| Plaintiffs, | | |
| v. | | 1:23-CV-836-DII |
| STATE OF TEXAS, et al., | | |
| Defendants. | | |

**ORDER**

Before the Court is Plaintiffs Epi's Canoe & Kayak Team, LLC and Jessie Fuentes's ("Plaintiffs") Motion to Remand, (Dkt. 6). Defendants State of Texas, et al., ("Defendants") filed a response, (Dkt. 19). After considering the parties' arguments and the relevant law, the Court will grant the motion to remand.

**I. BACKGROUND**

This case involves the installation of floating buoys on the Rio Grande near Eagle Pass, Texas. (Am. Pet., Dkt. 6-1, at 2). Epi's Canoe & Kayak Team, LLC is a small business that provides customers with kayak and canoe training and tours on the Rio Grande. (*Id.* at 19). Epi's Canoe and its owner, Jessie Fuentes, filed suit on July 7, 2023, in Travis County State Court, asserting that Texas's installation of the buoys violates the Texas Administrative Procedure Act and the Texas Constitution, and bringing an *ultra vires* claim against Governor Greg Abbott ("Abbott"). (*Id.* at 27–29).

In their original complaint, Plaintiffs asked the Texas State Court to declare that the installation of the buoys "violate[s] the Fourteenth Amendment of the United States Constitution" in addition to their state law claims. (Orig. Pet., Dkt. 1-2, at 22). However, no other reference is

1

made in the complaint to a Fourteenth Amendment violation, nor any federal due process or equal protection claim. (*See id.*). In their amended complaint, Plaintiffs omit this reference.

Although the Amended Petition removed the Fourteenth Amendment language, it still includes some references to federal law as part of their state law arguments. Among many other claims for relief, the amended petition asks the state court to declare that the buoys are "arbitrary and capricious because the Defendants are preempted by federal law and cannot operate [Operation Lone Star] and/or install buoys in Eagle Pass" (Am. Pet., Dkt. 6-1, at 29). Because a 1944 Treaty ("the 1944 Treaty") between the United States and Mexico governs management of the Rio Grande, Plaintiffs argue that Abbott lacks authority to install buoys in the river. (*Id.* at 29).

On July 21, 2023, Defendants removed the petition to this Court, citing Plaintiffs' original petition and stating that Plaintiffs' invocation of the Fourteenth Amendment, preemption, and mention of the 1944 Treaty provide this Court with federal question jurisdiction under 28 U.S.C. § 1331. (Notice of Removal, Dkt. 1, at 1–2). Five days later, Plaintiffs filed their motion to remand. (Mot. Remand, Dkt. 6). According to Plaintiffs, they had filed an amended petition on July 14—prior to the case's removal. (*Id.* at 2). They argue that their operative pleading includes only state law claims, and that the Court accordingly lacks jurisdiction. (Am. Pet., Dkt. 6-1, at 29). Because Plaintiffs' amended petition was the live pleading at the time of removal, they argue that no federal question exists to vest this Court with jurisdiction. (Mot. Remand, Dkt. 6). In response, Defendants argue that jurisdiction exists under *Grable* because the complaint raises a substantial federal question that is actually disputed and capable of being adjudicated without disrupting the balance between federal and state courts. (Defs.' Resp., Dkt. 19).

## II. LEGAL STANDARD

A defendant may remove any civil action from state court to a district court of the United States that has original jurisdiction. 28 U.S.C. § 1441(a). District courts have original jurisdiction over all civil actions that are between citizens of different states and involve an amount in controversy in excess of $75,000,. 28 U.S.C. § 1332(a), or arise under the Constitution, laws, and treaties of the United States. 28 U.S.C. § 1331.

The party seeking removal "bears the burden of establishing that federal jurisdiction exists and that removal was proper." *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002). The removal statute must "be strictly construed, and any doubt about the propriety of removal must be resolved in favor of remand." *Gasch v. Hartford Accident & Indem. Co.*, 491 F.3d 278, 281–82 (5th Cir. 2007); *see also Hood ex rel. Miss. v. JP Morgan Chase & Co.*, 737 F.3d 78, 84 (5th Cir. 2013) ("Any ambiguities are construed against removal and in favor of remand to state court."). A district court is required to remand the case to state court if, at any time before final judgment, it determines that it lacks subject matter jurisdiction. 28 U.S.C. § 1447(c).

## III. DISCUSSION

Plaintiffs' complaint seeks a declaration that Defendants' actions violate the Texas Administrative Procedure Act and are unauthorized by state law. (Am. Pet., Dkt. 6-1, at 28). State law claims predominate the Amended Petition. Plaintiffs argue that Abbott's actions exceed his authority under the 1974 Texas Disaster Act because jurisdiction under the law does not extend into the Rio Grande. (*Id.* at 28–29). Moreover, they argue that the Disaster Act does not provide for the creation of a Texas state border patrol, and that unlawful immigration is not a disaster under the meaning of the act. (*Id.*). Finally, they contend that Abbott's actions violate the Equal Protection Clause of the Texas Constitution. (*Id.* at 5 (citing Tex. Const. Art. I § 3a)). In support of these

claims, Plaintiffs do include some reference to federal law, arguing that Abbott's actions are *ultra vires* because the Texas Disaster Act cannot authorize actions that would be in express violation of the 1944 Treaty or preempted by the federal government's immigration authority. (*Id.* at 28–29).

Defendants assert that the Court has jurisdiction over these state law claims under *Grable & Sons Metal Prod., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 318–19 (2005). In *Grable*, the U.S. Supreme Court held that district courts may exercise jurisdiction over a state law claim if a federal issue is "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal–state balance approved by Congress." *Box v. PetroTel, Inc.*, 33 F.4th 195, 201 (5th Cir. 2022) (citing *Gunn v. Minton*, 568 U.S. 251, 258 (2013)). *Grable* confers federal jurisdiction in a "slim category" of cases. *Id.* (citing *Empire HealthChoice Assur. Inc. v. McVeigh*, 547 U.S. 677, 701 (2006)).

We assume without deciding that the first two elements are met. Plaintiffs' complaint at least mentions federal issues, including the applicability of the 1944 Treaty with Mexico and whether Texas's actions are preempted by federal law. These are disputed because "Texas strongly disputes each of Plaintiffs' claims that any challenged actions of the State violate the United States Constitution" or federal law. (Defs.' Resp., Dkt. 17, at 3).

The question, then, becomes whether the federal question ostensibly raised in this action is substantial and its adjudication would not disturb the federal-state balance. Here, the Court finds that these factors favor remand. Texas correctly argues that preemption and the 1944 Treaty are federal issues. But their adjudication is not a substantial component of Plaintiffs' claims, and to reach them would require the Court to delve into particularly sensitive state law issues. In *ultra vires* cases, as in here, the question is whether the official's actions are authorized by state law. Because state law is necessarily bound by federal law, questions of state law interpretation may touch on

federal issues, but that does not automatically create a substantial federal question. *See Hall v. McRaven*, 508 S.W.3d 232 (Tex. 2017) (declining to find a university chancellor acted *ultra vires* when he refused to turn over student records based on the argument that it would violate federal law). Plaintiffs assert that Governor Abbott lacks the authority under state law, as authorized by the state legislature, to venture into an area unauthorized by state law because it is the traditional province of federal authority. In other words, Plaintiffs invoke federal law as one argument for their preferred state law statutory construction. Resolving doubts in favor of remand, the Court does not read Plaintiffs to assert a direct federal claim, but a state law construction claim whose interpretation is affected by federal law. Accordingly, Plaintiffs' invocation of federal law is not sufficiently substantial to vest this Court with jurisdiction.

Plaintiffs' motion for a preliminary injunction is particularly helpful, as it spells out Plaintiffs' arguments in fuller detail and clarifies that their claims for relief rest almost entirely on state law. First, their argument that the Texas Disaster Act does not authorize construction of the buoys is wholly a question of state law interpretation. (*See* Mot. Prelim. Inj., Dkt. 7, at 4–5 (arguing that "disaster" does not include immigration)). The same is true for their argument that the Disaster Act provides "no authority for the creation of a Texas DHS/Border Patrol." (*Id.* at 6). Likewise, the geographic scope of the Disaster Act—and whether it extends into international borders—is a question of state law. (*Id.* at 7–9). Finally, any violation of the Texas Constitution is a state law inquiry. (*Id.* at 10). Every question presented by Plaintiffs in their motion is fundamentally one of state law, and all can be decided without adjudicating questions of federal law. Accordingly, adjudicating these questions of Texas state separation-of-powers would infringe on the federal-state balance. *Grable*, 545 U.S. at 318–19.

Further, Plaintiffs' references to federal law do not tip the balance in favor of jurisdiction because they are embedded within questions of state law interpretation. "When constitutional avoidance requires interpretation of a state statute, federalism concerns mandate 'that state courts provide the authoritative adjudication of questions of state law' and thus 'a federal court should await a definitive construction by a state court.'" *St. Joseph Abbey v. Castille*, 700 F.3d 154, 167–68 (5th Cir. 2012). Indeed, the Fifth Circuit was recently faced with the question of whether to allow a federal claim to proceed where the state court's interpretation of state law might dispose of the issue. It found that the "possibility that federal courts could declare [the state law] constitutionally infirm even though our conclusions might be based entirely on a faulty understanding of Texas law" warranted sending the case first to state court. *See Whole Woman's Health v. Jackson*, 23 F.4th 380, 386 (5th Cir. 2022), *certified question accepted* (Jan. 21, 2022), *certified question answered*, 642 S.W.3d 569 (Tex. 2022). The Fifth Circuit further noted that "[t]o avert creating needless friction with a coequal sovereign in our federal system," the federal court should first defer to the state court's interpretation.

*Whole Woman's Health* is directly on point. Plaintiffs' claims may involve federal questions, such as whether the buoys run afoul of the 1944 Treaty. But the state court's statutory construction may not even need to reach that far, because it would first have to find that the buoys are a lawful exercise of Abbott's executive authority, authorized by the Disaster Act, and permissible under the Texas Constitution. (Mot. Prelim. Inj., Dkt. 7, at 2–10). And, of course, Plaintiffs do not directly assert a federal cause of action. As *Whole Woman's Health* instructs, this is precisely the scenario in which federal courts should first defer to state court interpretation. 24 F.4th at 386. The Court need not "declare [Defendants' actions] constitutionally infirm . . . based entirely on a faulty understanding of Texas law." *Id.* Plaintiffs' complaint focuses on state law issues and should be

properly adjudicated by a Texas state court. Accordingly, the Court finds that the state law issues predominate over this action and an exercise of jurisdiction would offend the congressionally approved federal-state balance. As a result, the Court will remand this action back to Travis County.

## IV. CONCLUSION

Pursuant to 28 U.S.C. § 1447(c), **IT IS ORDERED** that Plaintiffs' Motion to Remand, (Dkt. 6), is **GRANTED**. This case is **REMANDED** back to the 98th Judicial District Court of Travis County, Texas. Defendants' motions to consolidate, (Dkt. 14), and exceed page limits, (Dkt. 21), are **DISMISSED AS MOOT**. The Clerk of the Court is directed to **CLOSE** this action.

**SIGNED** on August 10, 2023.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE